# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

AMMAR MARQUS,

                    Petitioner,

v.                                                    Case No. 20-11121
                                                      Hon. Denise Page Hood
REBECCA ADDUCCI, et al.,

                    Respondents.

_____/

## ORDER DENYING PETITIONER'S MOTION
## FOR TEMPORARY RESTRAINING ORDER [ECF No. 2]

## I.  INTRODUCTION

On May 5, 2020, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and Complaint for Injunctive Relief. ECF No. 1.  On the same day, Petitioner filed a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO"). ECF No. 2.  In the Motion for TRO, Petitioner seeks release from detention due to the heightened risk to his health due to infection from COVID-19. Petitioner currently is being held in civil detention pending deportation by U.S. Immigration and Customs Enforcement ("ICE") at the Chippewa County Correctional Center ("Chippewa Center"), in Sault Ste Marie, Michigan.  Because Respondents were served promptly and an appearance was filed on their behalf within 24 hours of Petitioner's case being filed, the Court afforded Respondents an opportunity to file an

expedited response and Petitioner to file an expedited reply. The Motion for TRO has been fully briefed.

## II.   **BACKGROUND**

Petitioner Ammar Marqus is a 42 year old Iraqi national who is now an immigration detainee. He was legally admitted to the United States as a refugee in 2012 and became a lawful permanent resident in 2013. He claims that he has no remaining family in Iraq because they all reside in the United States.

On August 23, 2015, Petitioner was arrested and charged with: (1) Criminal Sexual Conduct in the First Degree (Personal Injury), in violation of M.C.L. § 750.520b; (2) Interfering with Electronic Communications, in violation of M.C.L. § 750.540; and (3) Attempted Criminal Sexual Conduct in the Third Degree (Force or Coercion), in violation of M.C.L. §§ 750.520d and 750.92. On March 23, 2017, Petitioner was convicted in the 54th Judicial Circuit Court in Tuscola County after pleading no contest to Attempted Criminal Sexual Conduct in the Third Degree (Force or Coercion), in violation of M.C.L. § 750.520d, and Interfering with Electronic Communications, in violation of M.C.L. § 750.540. The court sentenced Petitioner to 365 days incarceration for each offense, to be served concurrently, and 18 months of probation. Petitioner also was required to register as a sex offender in the State of Michigan.

On November 15, 2017, Petitioner was taken into ICE custody following his release from the Tuscola County Jail. On November 22, 2017, ICE issued a Form I-862, Notice to Appear, charging him with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for an aggravated felony conviction involving an attempted crime of violence, and pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) for being convicted of a crime involving moral turpitude. On January 16, 2018, an Immigration Judge in the Detroit Immigration Court of the Executive Office for Immigration Review, within the U.S. Department of Justice, denied Petitioner's request for a custody redetermination hearing, finding that Petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). On January 29, 2018, the Immigration Judge sustained the charges of removability.

Petitioner subsequently applied for withholding of removal under the Immigration and Nationality Act and also sought protection under the United Nations Convention Against Torture. An evidentiary hearing was conducted at the Detroit Immigration Court on all applications for relief. On June 5, 2018, the Immigration Judge issued a decision denying all applications for relief and ordering Petitioner removed to Iraq. Petitioner filed an appeal with the Board of Immigration Appeals, and on November 23, 2018, the Board of Immigration Appeals affirmed the Immigration Judge's decision and dismissed his appeal, resulting in a final order of

removal.

Petitioner filed for a Petition for Review with the Sixth Circuit Court of Appeals and granted Petitioner a stay of removal. On November 7, 2019, Petitioner filed a motion to hold the case in abeyance pending decision in the United States Supreme Court case *Nasrallah v. Barr*, which the Government opposed. The Sixth Circuit has not yet ruled on the motion, and the case remains pending. Petitioner has been in ICE custody for more than two and one-half years.

Petitioner states that he has preexisting medical conditions that make him highly vulnerable to serious illness and death from the COVID-19 disease. Prior to coming to the United States, Petitioner claims he was diagnosed with hypertension and has reported the same to Respondents. He experiences chest pain often, and he states that he has symptoms of diabetes but has not been diagnosed with this condition because he has been immigration custody. Petitioner indicates that he has a history of syphilis and severe hemorrhoids that cause pain and bleeding. There is no indication that Petitioner has any regularly prescribed medication or treatment regimen for any of the foregoing conditions. The record before the Court indicates that, on May 4, 2020 (and no other date), Petitioner was prescribed 20 milligrams of Propranolol for his blood pressure.

Petitioner has lost several teeth while in ICE custody and has not been able to

get dentures.  Petitioner also represents that he suffers from headaches and PTSD as a result of being a victim of a terrorist bombing while driving a taxi in Baghdad, Iraq. Petitioner states that shrapnel from the bomb remains in his head, which he claims has caused infection while he has been in detention. He states that he has sent several kites and requests for treatment but has not received adequate treatment for these issues while in ICE custody.  Petitioner contends that he is critically vulnerable to COVID-19 because of these underlying conditions and susceptibility to infection.

Petitioner states that he has now served over three times more in civil immigration custody than the sentence he received in his criminal case, and in the event he is released, he will still be required to report as a sex offender under the Sex Offender Registration Act and monitored closely. He asserts that he is not a flight risk because he does not have a passport and his entire family (all of whom are United States citizens) resides in Macomb County, Michigan, where he will stay with his parents and brother.

## III.  <u>LEGAL STANDARD</u>

In this case, Respondents have received notice of the Motion for TRO and filed a response.  Based on that notice, the Court considers the following four factors in determining whether to issue a temporary restraining order:

> (1)  whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

(2)    whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;

(3)    whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and

(4)    whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).  The standard for injunctive relief is not a rigid and comprehensive test.  The four factors are to be balanced, not prerequisites that must be satisfied, as "these factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc.* 963 F.2d 855, 859 (6th Cir. 1992).

## IV.  <u>ANALYSIS</u>

Petitioner states that COVID-19 disease has infected many immigrant detainees and is likely to infect scores more of immigrant detainees across the country because of the confined, congregate nature of the detention facilities in which immigration detainees are held. It is undisputed that COVID-19 has no vaccine, no treatment, and no cure. The only option for medically vulnerable people, of which Petitioner claims to be, to avoid serious illness and death from COVID-19 is to practice social distancing.  Because of the close quarters in which detainees are held at the Chippewa

6

Center, Petitioner asserts that it is impossible to practice social distancing there to avoid infection. For that reason, he argues that there is no way to ensure that at-risk individuals such as himself receive adequate protection from COVID-19 while in detention. In his Motion for TRO, Petitioner maintains that, unless he is immediately released from detention, his constitutional right to be free of the heightened risk of illness and death due to his detention during the pandemic will be violated.[1]

## A.     Likelihood of Success on the Merits

---

[1] In his Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254, Petitioner argues that he has been detained since November 2017 and is not significantly likely to be removed in the reasonably foreseeable future, such that he must therefore be released under *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* ECF No. 1, PgID 14-19 (¶¶ 41-61). Petitioner did not raise a *Zadvydas*-type argument in his Motion for TRO, as noted by the Respondents. *See* ECF No. 5, PgID 70 (footnote 3) ("While Petitioner raises the argument in his habeas petition that his release is required by *Zadvydas v. Davis*, 533 U.S. 678 (2001), Petitioner does not rely on this argument in his motion for a temporary restraining order, and thus will not be addressed in this response brief."). In fact, in his Motion for TRO, Petitioner states only, "Indeed, the claim brought by Plaintiff—a due process challenge to the fact of his civil immigration detention—is regularly reviewed in habeas proceedings. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 684–85, 690 (2001) (due process challenge to detention brought in habeas); . . ."

The Court notes that Petitioner made a *Zadvydas*-type argument in his reply brief regarding the Motion for TRO, however, a district court generally does not address an argument raised for the first time in a reply brief and the Court does not elect to do so in this case. *See, e.g., Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662, 676 (6th Cir. 2006) (a district court properly declines to consider an issue raised for the first time in a reply brief) (citing *Sundberg v. Keller Ladder*, 189 F.Supp.2d 671, 682-83 (E.D. Mich. 2002) (noting, in the context of summary judgment, "it is not the office of a reply brief to raise issues for the first time") (citation omitted)).

As a civil detainee, Petitioner's detention is governed by the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). Petitioner argues that he is likely to establish that Respondents violated—and continue to violate—his Fifth Amendment rights by detaining him in conditions that in no way "reasonably relate[] to a legitimate governmental purpose" because it is "arbitrary or purposeless[.]" *Bell*, 441 U.S. at 539. *See also J.H. v. Williamson Cty., Tenn.*, 951 F.3d 709, 717 (6th Cir. 2020) (applying *Bell* test to pre-trial detainee's conditions of confinement claim). Petitioner argues that civil detention must not "amount to punishment of the detainee." *Bell*, 441 U.S. at 535.

Petitioner contends that there is no legitimate governmental purpose behind condemning him to confined quarters with inadequate hygiene supplies and non-functioning facilities, where he is unable to practice social distancing. Petitioner's insists that his continued detention is not "reasonably related" to its objective because it creates a serious risk of imminent illness and death. *Id.* at 539. Petitioner speculates that there are already detainees or workers at Chippewa Center carrying the coronavirus asymptomatically, making it only a matter of time before they begin to show symptoms of COVID-19. Petitioner states that several federal courts have already determined that risk to be urgent, imminent, and unrelated to any legitimate governmental goal. Citing *Xochihua-Jaimes v. Barr*, No. 18-71460, 2020

8

WL 1429877 (9th Cir. Mar. 24, 2020) (*sua sponte* ordering immediate release of immigrant petitioner "[i]n light of the rapidly escalating public health crisis, which public health authorities predict will especially impact immigration detention centers"); *Thakker v. Doll*, No. 1:20-cv-480 (M.D. Pa. Mar. 31, 2020) (ordering immediate release of immigrant petitioners because "we can see no rational relationship between a legitimate government objective and keeping Petitioners detained in unsanitary, tightly-packed environments").

Petitioner argues that immediate release is the sole effective remedy for the constitutional violation he is enduring.  He asserts that, when the government fails to meet its obligations to provide adequate medical care, courts have a responsibility to remedy the resulting constitutional violation. Citing *Brown v. Plata*, 563 U.S. 493, 511 (2011) ("When necessary to ensure compliance with a constitutional mandate, courts may enter orders placing limits on a prison's population.").  Petitioner suggests that the power to remedy such a constitutional violation arising from government confinement falls within the Court's broad power to fashion equitable relief. Citing *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978).  Petitioner argues that federal and state courts across the country have ordered the release of detained individuals to vindicate the detainees' Due Process rights in the face of the COVID-19 pandemic. *See* ECF No. 2, PgID 36-37 (collecting cases).

Petitioner accurately contends there is no known cure or treatment for COVID-19, no known vaccine, and no known natural immunity, and the only way to mitigate the spread of contagion is through social distancing and enhanced hygiene. Petitioner represents that he: (a) cannot maintain the necessary distance from either his fellow detainees or the staff at the facility sufficient to protect his health; and (b) does not have access to the requisite supplies and facilities to adhere to the government's hygiene guidelines for preventing infection.  Petitioner claims that, because he has shown that his continued detention would cause an unacceptably high risk of grave injury, Petitioner is likely to succeed on the merits of his claim that his continued detention violates his rights under the Fifth Amendment.

Respondents argue that Petitioner cites to no facts to support his speculation that: (a) the condition of his confinement is not "reasonably related to a legitimate objective" or "arbitrary or purposeless;" or (b) "[i]n all likelihood, there are already detainees or workers at Chippewa [Center] carrying the novel coronavirus asymptomatically, making it only a matter of time before they begin to show symptoms of COVID-19." Respondents note that there have only been two confirmed cases of COVID-19 in Chippewa County (where Chippewa Center is located). Respondents contend that the Chippewa Center has managed to remain virus-free at this advanced stage of a pandemic, which they suggest is a testament to the

effectiveness of the precautions taken to keep the Chippewa Center population safe.

Respondents cite the rigorous screening procedures at the Chippewa Center – both for its incoming inmates and for the limited civilians permitted entry – along with cohorting. *See* ECF No. 5, PgID 58-63. They cite the increased frequency of cleaning and sanitation, providing both inmates and staff with cleaning and disinfectant supplies. Respondents rely on the fact that the Chippewa Center is virus-free, something that another judge in this District found persuasive when denying habeas relief to a Chippewa Center detainee. That court denied habeas relief based on the absence of COVID-19 in that facility and the proactive measures taken to protect Chippewa Center inmates. *See Czerwinski v. Adducci*, No. 20-10826, 2020 WL 1915326, at *1 (E.D. Mich. Apr. 20, 2020) (Borman, J.) ("The Court finds no deliberate indifference by ICE detaining him in the Chippewa County jail where there are no COVID-19 positive individuals, and where there are significant hygienic measures in place for protection.").

As Petitioner notes, Respondents do not contest the specific and particularized medical conditions that Petitioner claims put him at a greater risk for severe illness or death from COVID-19. Petitioner states that outbreaks in other facilities, including those in Michigan, and the 50% rate of positive tests for those tested nationwide in ICE facilities, is sufficient evidence that the measures Respondents have taken are

inadequate because it is impossible for detainees like Petitioner to practice social distancing at the Chippewa Center. Petitioner indicates that he recently was in a situation where there were 12 individuals in a pod, with five on top and seven on the bottom.

Petitioner asserts that the Chippewa Center only tests detainees who, at intake, "present symptoms compatible with COVID-19," even if an individual has already been exposed to someone with a confirmed case or may present symptoms subsequently. Petitioner contends that this approach is wholly inadequate as it ignores the fact that COVID-19 spreads rapidly through individuals who are asymptomatic.

Petitioner also contends that Respondents' "cohorting" measures of grouping new detainees known to have prior exposure to confirmed cases of COVID-19 provide him little protection. He states that all that this policy achieves is separating detainees who have come into contact with an infected individual from the rest of the population. There is no testing of the cohort population to see if they are infected but asymptomatic, nor is there testing of staff who may have come into contact with those individuals.

Petitioner argues that Repondents only test individuals who "present symptoms compatible with COVID-19" at the time of intake and at no other times. They do not guarantee that detainees may obtain testing at any point after the initial screening, and

they only screen, but do not test, staff and other essential personnel who move in and out of the facility and around the outside world.  For that reason, Petitioner claims that there is no way to monitor or ensure they are following appropriate social distancing or quarantining. Petitioner also cites Respondents' failure to guarantee detainees protective personal gear or the ability to social distance, instead relying on measures like educational posters and detainees cleaning their own sleeping areas. Petitioner states that these procedures ignore the CDC recommendations and are entirely inadequate to prevent the spread of contagion.

Petitioner believes he has articulated a "substantial risk" that, unless he is released from detention, "harm will occur." Citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).  He asserts that the "stark reality" of COVID-19 is that, due to its "ability to spread quickly through asymptomatic human vectors," there is a "substantial risk of catching the COVID-19 virus for any group of human beings in highly confined conditions." Citing *Malam*, 2020 WL 1672662, at *9 (E.D. Mich. Apr. 6, 2020), as amended (Apr. 6, 2020) (internal quotation marks omitted).

Petitioner also challenges Respondents' suggestion that release would not address his injuries and asserts that his release is the only satisfactory remedy available, even if he may also be exposed to the novel coronavirus once released.  He

13

contends that "has no bearing on whether [defendants] have exposed [the plaintiff] to the likelihood of irreparable harm," *Malam*, 2020 WL 1672662, at *9, because the harm is not that he may be exposed to the virus.  He states that the harm is detaining him in a congregate setting where he cannot protect herself through social distancing and vigilant hygiene. He argues that dramatically and unacceptably increases the risk of suffering severe illness or death and claims it deprives him of Due Process.

Petitioner concludes that he is likely to succeed on the merits because the question is not whether ICE has taken precautionary measures in response to COVID-19, but whether those measures are constitutionally adequate.  He states that those measures are not constitutionally adequate. Petitioner contends that Respondents are "grievously underestimat[ing] the seriousness of the risk to [him], in spite of precautionary measures and despite the lack of confirmed . . . outbreak [at Chippewa Center] to date." *Malam*, 2020 WL 1672662, at *11.

The Court finds that Petitioner has not established that he is likely to succeed on the merits.  There are no current or suspected cases of COVID-19 at the Chippewa Center and there are only two cases in the county of the facility.  As this Court stated in *United States v. Porter*, No. 19-20115, 2020 WL 1847988 (E.D. Mich., April 13, 2020):

> The Court notes that the risk of contracting COVID-19 is "not the sole determinant of whether detention is appropriate." Citing *United States*

*v. Jones*, Crim. No. 17-582, 2020 WL 1323109, at *1 (D. Md. Mar. 20, 2020) (rejecting release requested by incarcerated pregnant detainee on grounds that she is "at increased risk of contracting COVID-19"). *See also United States v. Raia*, —— F.3d ——, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread

*Id.* at *4. In *Porter*, this Court denied Porter's emergency motion for pretrial release. It did so even though Porter presented with underlying health conditions that placed him at higher risk of complications if he were infected with COVID-19 because the Court found that there was no guarantee that Porter would be immune from contracting COVID-19 simply because he is not detained. *Id.* ("As COVID-19 has become widespread in Michigan, however, there is no guarantee that Defendant is immune from contracting COVID-19 simply because he is not in SCJ.").

The Court finds that to be particularly true in the instant case. The undisputed data shows that the number of cases in Chippewa County – 2 confirmed cases with zero deaths – is one of the lowest in the State of Michigan, whereas Macomb County, where Petitioner resided prior to his detention, and where it is believed that Petitioner would return if released from custody, has more than 6,000 cases and approximately 700 deaths. https://www.michigan.gov/coronavirus/0,9753,7-406-98163-520743--,00.html. On that basis, the Court is not convinced that releasing Petitioner would put him at less risk.

Based on the reasons set forth above, including the lack of any confirmed cases of COVID-19 at the Chippewa Center, the Court finds that the mere existence of COVID-19 in society and the speculative possibility that it may spread to the Chippewa Center, do not support a find that Respondents are violating Petitioner's Fifth Amendment rights.

The Court also finds that Petitioner has not demonstrated that his medical conditions make him more susceptible to increased risk if infected by COVID-19. The Court recognizes that Petitioner has argued that he has made specific allegations that place him squarely within the high risk category, including hypertension, frequent chest pain, symptoms of diabetes (but no diagnosis during the time he has remained in immigration custody, *i.e.,* for the past two and half years), PTSD, headaches, shrapnel in his head that has been infected, and a history of syphilis and severe hemorrhoids.  As the World Health Organization ("WHO") has determined, the populations most at risk of suffering severe health risks from COVID-19 include "those with underlying medical conditions (such as cardiovascular disease, diabetes, chronic respiratory disease [asthma], and cancer)." Coronavirus, World Health Organization (May 5, 2020), https://www.who.int/docs/default-source/ coronavirus/situation-reports/20200311-sitrep-51-covid-19.pdf?sfvrsn=1ba62e57_10. According to the United States Center for Disease Control ("CDC"), individuals of

any age who have serious underlying medical conditions, including serious heart conditions, diabetes, asthma, and obesity are at higher risk for severe illness from COVID-19. People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (April 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

Although there appears to be some evidence that Petitioner has high blood pressure (hypertension) and Petitioner suggests that he has diabetes, the Court does not find that Petitioner has sufficiently established any serious underlying health conditions identified by the WHO or the CDC that would make him more susceptible to severe complications in the event of a COVID-19 infection. As such, the Court must consider whether a detainee's constitutional rights are being violated – and whether Respondents are being deliberately indifferent to Petitioner's medical conditions – when he has not demonstrated special needs, a claim for which the law does not provide a constitutional remedy.

The Court concludes that Petitioner is not likely to prevail on the merits of his claim that Respondents are violating his constitutional rights by continuing to detain him during the COVID-19 pandemic. Because the Court is not persuaded that Petitioner has established that his constitutional rights are being violated, the Court

cannot find that Petitioner's argument that his release is the only effective remedy for a constitutional violation bolsters his likelihood of success on the merits.

The Court concludes that Petitioner cannot show that there is a substantial likelihood of success on the merits.

## B.   Irreparable Harm

Petitioner can establish irreparable harm if he can show that, in the absence of immediate release, he "will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (internal quotations and citation omitted). A moving party must show that irreparable harm is "both certain and immediate, rather than speculative or theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). The Court must evaluate whether Petitioner can establish a likelihood of substantial and immediate irreparable injury.

Respondents argue that Petitioner must present the Court with something more than a generalized fear of exposure to disease in a detention facility. Citing *Awshana,*

*et al., v. Adducci, et al.*, 2020 WL 1808906, at *13 (E.D. Mich. Apr. 9, 2020). They contend that, if generalized allegations alone "were deemed sufficient, then all inmates would be entitled to release until the pandemic subsides." *Id*. at *8.  As many district courts have recognized, "Every person in the United States, whether in a detention facility or not, faces COVID-19 exposure. *Albino-Martinez, et al., v. Adducci, et al.*, 2020 WL 1872362, at *4 (E.D. Mich., April 14, 2020), citing *United States v. Steward*, No. S1:20cr0052 (DLC), 2020 WL 1468005, at *1 (S.D.N.Y. Mar. 26, 2020) ("there is also no reason to find that the defendant's release would lessen the risk to his health presented by COVID-19"). *See also United States v. Taylor*, No. 5:19-CR-192-KKC-MAS, 2020 WL 1501997, at *5 (E.D. Ky. Mar. 26, 2020)("there is little reason to believe that [the detainee] would be more at risk if detained versus being released").

According to James Jacobs, Assistant Field Office Director with the Detroit Field Office of Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS), whose duties include oversight of ICE detention facility matters in the Detroit Field Office area of responsibility, there are still no actual or suspected cases of COVID-19 at the Chippewa facility.  For this reason, Respondents argue and the Court concludes that Petitioner has failed to meet the burden of showing that he would face immediate and

irreparable injury absent release from the Chippewa Center.

Petitioner counters that, without comprehensive testing, Defendants cannot assure that COVID-19 has not already entered Chippewa Center. He states that when this case was filed, there was not yet an outbreak at Chippewa Center but there have been numerous outbreaks at various ICE facilities across the country. Given this likelihood of spread, Petitioner identifies courts nationwide that have ordered releases from ICE facilities that had not yet had a confirmed case. Citing *Bent v. Barr*, No. 4:19-cv-06123, 2020 WL 1812850 (N.D. Cal. Apr. 9, 2020); *Malam v. Adducci*, No. 2:20-cv-10829-JEL-APP, 2020 WL 1809675 (E.D. Mich. Apr. 9, 2020); *Bahena Ortuno v. Jennings*, No. 20-cv-2064-MMC, 2020 WL 1701724 (N.D. Cal. Apr. 8, 2020); *Bravo Castillo v. Barr*, No. 20-605-TJH (AFMx), --- F. Supp. 3d ----, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Jimenez v. Wolf*, No. 1:18-cv-10225-MLW, Dkt. 507, Order (D. Mass. Mar. 26, 2020); *Xochihua-Jaimes v. Barr*, No. 18-71460, Dkt. 53, Order (Mar. 23, 2020), amended (9th Cir. Mar. 24, 2020). In at least three of these cases (*Bravo Castillo; Jimenez; Xochihua-Jaimes*), the plaintiffs did not met CDC guidelines for those at highest risk.

In his reply, Petitioner contends the facts of this case much more closely resemble *Malam v. Adducci*, No. 5:20-cv-10829-JEL-APP, 2020 WL 1809675 (E.D. Mich. Apr. 9, 2020). He argues that Respondents almost entirely ignore the ruling in

that case in favor of the decision in *Awshana*.  Petitioner states that, like Malam, he has shown "a high likelihood of irreparable injury absent an injunction, both in the form of substantial risk to [their] health and life from COVID-19 and due to [their] alleged constitutional violations." *Malam*, 2020 WL 1809675, at *2.  Petitioner notes that, in contrast, the *Awshana* petitioners did not even "allege that they are in a high-risk category."

As set forth above, however, the Court does not find that Petitioner's documented health conditions support a conclusion that he has underlying health risks that place him at heightened risk in the event of a COVID-19 infection.  In the absence of such health conditions, the Court does not find that Petitioner can establish a likelihood of substantial and immediate irreparable injury.  Accordingly, the Court finds that this element does not favor Petitioner.

## C.    Balance of Harms and Public Interest

Petitioner contends that his release, along with adequate public health and safety measures, furthers Respondents' goal of ensuring the safety of other detainees, the staff at the Chippewa Center, and the community at large.  Petitioner asserts that a rapid and severe outbreak at the Chippewa Center would create a "tinderbox scenario" with dire consequences for detainees and staff, as well as the Sault Ste. Marie metropolitan area, which would be drained of its limited medical resources,

including intensive care unit beds and ventilators.

Respondents assert that Petitioner is not a low-risk offender, as he has been convicted of Attempted Criminal Sexual Conduct in the Third Degree (Force or Coercion) and Interfering with Electronic Communications. According to Respondents, there are no conditions that could reasonably assure the safety of the community, and Petitioner also should continue to be detained because the public interest in enforcement of United States' immigration laws is significant. Citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant.") (citing cases); *Nken*, 556 U.S. at 435 ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and permits and prolongs a continuing violation of United States law.") (internal quotation omitted).

Respondents assert that their valid reasons and statutory bases for detaining Petitioner warrant continued detention of him. They argue that is particularly true as the implications of granting Petitioner the relief he seeks would be far-reaching if other courts in this and other jurisdictions agreed with his theory. *United States v.*

*Barry Allen Gabelman*, No. 2:20-CR-19 JCM (NJK), 2020 WL 1430378, at *1 (D.

Nev. Mar. 23, 2020) (in denying motion to reconsider: "The court acknowledge[d]

that the spread of COVID-19 may be acutely possible in the penological context, but

the court cannot release every detainee at risk of catching COVID-19 because the

court would be obligated to release every detainee.").

The Court finds that there are important and persuasive interests that support

each parties' interests with respect to these two elements.  As a result, the Court

concludes that these elements do not weigh in favor of either party.

## E.     Conclusion

Because the Court has found that Petitioner has not demonstrated a likelihood

of success on the merits or that he is likely to suffer irreparable and immediate harm

if he is not immediately released from the Chippewa Center, the Court denies

Petitioner's Motion for a Temporary Restraining Order.

## V.     **<u>CONCLUSION</u>**

For the reasons set forth above,

IT IS ORDERED that Petitioner's Motion for Temporary Restraining Order

[ECF No. 2] is DENIED.


                                             s/Denise Page Hood
DATED: May 18, 2020                          United States District Judge

23

24